**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 10-20410-CR-LENARD/TURNOFF

**UNITED STATES OF AMERICA**,

        Plaintiff,

vs.

**ANTWAN ROSHAX GRAY,
SHAHEED RASHARD TOMPSON,**

        Defendants.
_____/

**OMNIBUS ORDER ADOPTING REPORT AND RECOMMENDATION (D.E. 662); DENYING DEFENDANT SHAHEED RASHARD THOMPSON'S MOTION TO SUPPRESS WIRETAP EVIDENCE (D.E. 287); AND DENYING DEFENDANT ANTWAN ROSHAX GRAY'S MOTION TO SUPPRESS THE FRUITS OF ILLEGAL WIRETAPS AND SEARCHES (D.E. 301)**

**THIS CAUSE** is before the Court on the Report and Recommendation of U.S. Magistrate Judge William C. Turnoff ("Report," D.E. 662), issued on March 31, 2011. In his Report, Magistrate Judge Turnoff recommends that Defendant Shaheed Rashard Thompson's Motion to Suppress Wiretap Evidence (D.E. 287), filed on September 1, 2010, and Defendant Antwan Roshax Gray's Motion to Suppress the Fruits of Illegal Wiretaps and Searches (D.E. 301), also filed on September 1, 2010, be denied. (Report at 21.) Thompson filed Objections (D.E. 692) to the Report on April 18, 2011 and Gray did the same (D.E. 697) on April 18, 2011. The Government filed its Omnibus Response to the Objections (D.E. 700) on April 22, 2011. Upon review of the Report, Objections, Response and the record, the Court finds as follows.

**I.    Background**

Defendants Gray and Thompson are alleged to have participated in a narcotics trafficking conspiracy from approximately May 2009 through June 2010. During the Government's investigation of Gray, Thompson and their alleged co-conspirators, the FBI obtained three wiretap orders authorizing the surveillance of certain telephone targets. Special Agent Lionel Lofton submitted affidavits in support of each wiretap application and the orders were issued on August 28, September 25 and October 23, 2009, respectively. On November 13, 2009, the Government also obtained search warrants, based on Lofton's affidavit, for five residences and an automobile (Lexus).

Gray and Thompson both move to suppress the wiretap evidence and evidence seized from the five residences and the automobile, alleging multiple deficiencies in Lofton's supporting affidavits including materially inaccurate and misleading statements in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). Magistrate Judge Turnoff held a hearing on these motions on November 1, 2010. (*See* Minute Entry, D.E. 437.)

### A. Report and Recommendations

In his Report, Magistrate Judge Turnoff finds that Lofton's affidavit "provided sufficient information regarding the ordinary means of investigation employed and why these were inadequate to comply with the necessity requirement of 18 U.S.C. § 2518(1)(c)." (Report at 10.)[1] The Report finds that Lofton's averments that physical

---

[1] 18 U.S.C. § 2518(1)(c) provides that each application for an order authorizing or approving the interception of a wire, oral, or electronic communication shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

surveillance, drive-by surveillance, pole camera surveillance, interviewing witnesses, grand jury subpoenas, trash searches and other means of investigation would have been inadequate, dangerous and not feasible. (*Id*. at 9-10.) The Report also declines to adopt Thompson's arguments that Lofton omitted information from his affidavits that would have led the issuing District Court Judge to find the need for wiretap had been negated, stating that Thompson failed to proffer specific omissions and in any event, it would have been irrelevant. (*Id*. at 10-13.)

The Report indicates that the Defendants' allegations of materially inaccurate and misleading information within Lofton's affidavit are conclusory, unsupported, and therefore a *Franks* hearing is not warranted and this claim must be denied. (*Id*. at 17.) The Report finds that the affidavits supporting the wiretap orders were valid and more than sufficient to satisfy 28 U.S.C. § 2518. (*Id*. at 18.)

Finally, the Report concludes that the search warrants issued for the five residences and the automobile were based on information obtained through legal wiretaps and therefore were valid. (*Id*. at 19-20.) Consistent with all of his findings, the Magistrate Judge recommends that Gray and Thompson's motions to suppress be denied. (*Id*. at 21.)

### B. Defendants' Objections to the Report

Both Gray and Thompson object to the findings and recommendations of the Report.

Thompson first takes issue with the evidence he surmises might be relevant to the

*Franks* claims but remains undisclosed by the Government. (Thompson Objections at 2-3.) He had filed a motion to compel disclosure of evidence compiled by the FBI or Miami Gardens Police Department prior to the wiretap applications which was denied. (*See* Order Denying Motion to Compel, D.E. 378.) The order denying Thomson's motion to compel was never appealed. Thompson also makes objections to the Report's factual findings, mostly having to do with the availability of other means of investigation that were either inadequately averred in the wiretap affidavits or incorrectly found by Magistrate Judge Turnoff to be sufficient for the issuance of a wiretap order. For instance, Thompson objects that the omissions of the purported leader of the Murda Grove Boys gang, as well as identification of co-defendants Artrell Terrence Gray and Jerome McMillan, were not material and would have served to negate the necessity. Thompson questions the ordinary means of investigation available to the FBI, such as an undercover vehicle with tinted windows, or the continued use of the confidential source to infiltrate the gang, arguing that Lofton's affidavits do not foreclose these methods or omit relevant information that would be considered by a judge in determining necessity under § 2518(1)(c). Consequently, Thompson objects to the Report's recommendation that his proffered evidence is not sufficient to warrant a *Franks* evidentiary hearing.

Gray's Objections similarly protest the Report's findings that ordinary means of investigation – physical surveillance, trash searches and continued use of the confidential source – were too dangerous, inadequate or not feasible. Gray claims that Lofton's affidavits omitted the various results and success of the FBI's pre-wiretap investigation of

4

the gang, that, if included, would have eliminated necessity. He stresses that the confidential source and ordinary surveillance were able to give investigators a somewhat accurate picture of what activities took place at the targeted residences. (Gray Objections at 3-5.) According to Gray, "[s]uch background and access begs for the use of Confidential Source in an undercover capacity." (*Id*. at 8.) Gray also challenges the Report's finding that his allegations of deliberately misleading statements or omissions are unsupported and therefore do not merit a *Franks* hearing. Gray does not object to the Report's finding that search warrant that issued based on the wiretaps was invalid.

## II. Standard for *Franks* Violation and Hearing

A defendant alleging a *Franks* violation must make "a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." 438 U.S. at 155-56. The defendant bears the burden to show any misrepresentation or omission was intentional or reckless and not merely negligent. *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986). The *Franks* analysis is two pronged: (1) the alleged misrepresentation or omission must have been knowingly or recklessly made by the affiant and (2) the result of excluding the alleged misrepresentations would have been a lack of probable cause for issuance of the warrant. *United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001) (citation omitted).

In order to merit an evidentiary hearing on the *Franks* issue, the defendant's challenge "must be more than conclusory and must be supported by more than a mere

desire to cross examine." *Franks*, 438 U.S. at 171. Allegations of deliberate or reckless misrepresentation must be accompanied by an offer of proof. *United States v. Haimowitz*, 706 F.2d 1549, 1556 (11th Cir. 1983).

## III. Discussion

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, sets forth the requirements for the authorization of wiretaps. *See* 18 U.S.C. § 2518(1). The wiretap application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The "necessity" requirement is a safeguard against employing electronic surveillance routinely or where less intrusive investigative techniques will succeed. *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986). There is no rule for the satisfaction of the necessity requirement; courts must determine whether the Government has made the requisite showing on a case-by-case basis. *Van Horn*, 789 F.2d at 1508; *see also United States v. Nixon*, 918 F.2d 895, 901 (11th Cir. 1990).

A wiretap affidavit need not set forth the comprehensive exhaustion of all possible techniques; rather, it must show with specificity why ordinary means of investigation would fail, measured in a practical and commonsense fashion. *Van Horn*, 789 F.2d at 1496; *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978) (citation omitted); *United States v. Carranza*, 921 F.2d 1557, 1568 (11th Cir. 1991). "[C]ourts will not invalidate a wiretap order simply because defense lawyers are able to suggest post factum some

investigative technique that might have been used and was not. It is enough if the affidavit explains the prospective or retrospective failure of several investigative techniques that reasonably suggest themselves." *Hyde*, 574 F.2d at 867. Section 2518(1)(c) does not foreclose electronic surveillance if every other imaginable form of investigation has not yet been attempted; it "simply . . . inform[s] the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Scibelli*, 549 F.2d 222, 227 (1st Cir. 1977) (quotation omitted). Requiring the Government to demonstrate that no reasonable alternative to wiretapping exists would set an unduly burdensome standard. *United States v. Harvey*, 560 F.Supp. 1040, 1056 (S.D. Fla. 1982).

Here, Lofton's August 28, 2009 affidavit – the basis of Thompson and Gray's challenges – avers the following in support of its showing of necessity:

- Stationary observation in the form of a pole camera of 17840 Myrtle Lake Drive was largely unsuccessful. The pole camera could not identify individuals and objects. Drive-by surveillance was conducted with limited success, identifying only the vehicles driven by the targets as rental vehicles. However, agents could not identify individuals or objects and there was a great risk of being spotted by the numerous lookouts in the neighborhood. Finally, although agents were able to observe controlled purchases in Myrtle Grove Park on occasion, much of the park is difficult to observe due to vegetation and buildings obstructing view from the outside. (*See* Lofton Aff. ¶ 36.)
- The confidential source, who provided much information in his debriefings and participated in the controlled purchases of cocaine, could not deal directly with most members of the organization. He did not have the trust and confidence of the members of the organization such that he could gather information about its operation, supply of narcotics, storage places, money laundering and heirarchy. Agents attempted to recruit other confidential informants without success. (*See id.* ¶ 38.)
- Interviewing suspected participants in the conspiracy would not yield information as most would decline to provide information out of fear of self-incrimination or would reveal the existence of the investigation to the other

7

> conspirators. (*See id.* ¶ 41.)
> - A grand jury investigation was also ruled out as targets of the investigation were considered unlikely to cooperate, would invoke their Fifth Amendment rights, and physical documents either did not exist or could not be subpoenad without revealing the existence of the investigation to the targets. (*See id.* ¶ 43.)
> - Trash collection by law enforcement would have tipped off the lookouts, thereby jeopardizing the investigation. (*See id.* ¶ 44.)

(D.E. 287-1.) The Court paraphrases here – Lofton's Affidavit is considerably more thorough and specific.

Paragraphs 36 and 38 explain fully and with specificity the agents' attempts at physical surveillance and use of a confidential source and how these failed. *See United States v. Green*, 40 F.3d 1167, 1172-73 (11th Cir. 1994). The Court credits Lofton's assessment of the confidential informant's beliefs that he could not infiltrate the Murda Grove Boys gang or collect additional information. The use of a confidential informant to infiltrate an alleged criminal organization and for information gathering is a dangerous one; consequently the Court assumes agents would not be cavalier with the safety of its informant.

Paragraphs 41, 43 and 44 contain statements on why interviewing witnesses, grand jury investigation and trash collection would not be feasible and the Court finds them to be a thoughtful and complete statement on why these methods reasonable appear unlikely to succeed. *See* § 2518(1)(c); *see also Van Horn*, 789 F.2d at 1496. Here, the Government did not seek to catch one or two conspirators in the act of distribution, but instead to expose the entire conspiracy. *Cf. id.* at 1497 (wiretap order upheld where the

8

Government sought to uncover a marijuana importation conspiracy).

Ultimately, Lofton's Affidavit establishes that it was nearly impossible to determine location, participation in and time of the drug transactions without knowing the content of the telephone calls. *Green*, 40 F.3d at 1173; *Van Horn*, 789 F.2d at 1497 (ordinary surveillance, even if practical, would not lead to direct evidence of criminal activity). The targets' use of lookouts and their close-knit organization "made other procedures unlikely to succeed or too dangerous." *Green*, 40 F.3d at 1173.

Defendants' Objections are exactly the type of Monday-morning quarterbacking that courts are not to consider. *See Hyde*, 574 F.2d at 867. Defendants' conjectures based on the limited successes of the Government's physical observation and confidential source do not persuade and this Court adopts the well-presented findings and legal conclusions of the Report, finding that Lofton's Affidavit adequately satisfied the necessity requirement of § 2518(1)(c).

Defendants' *Franks* arguments are similarly unpersuasive. Defendants contentions that Lofton's misrepresentations and omissions were knowingly or recklessly made are purely conclusory. Thompson's mention of information exists that is relevant to his *Franks* claim and sought via motion to compel merely speculation; the lack of appeal of the motion's denial by the Magistrate Judge moots its consideration by the Court. Moreover, the Court finds that much of what Defendants allege – *e.g*. agents were able to identify a leader of the Murda Grove Boys gang, "Maurice,"or the participation of Artrell Terrence Gray and McMillan – would have been irrelevant to the necessity analysis of the

9

judge issuing the wiretap order. The Court concurs in the Magistrate Judge's findings that Defendants did not make the preliminary showing which would necessitate a *Franks* hearing, much less set forth a convincing *Franks* claim. *See Haimowitz*, 706 F.2d 1556.

Finally, Gray does not object to the Report's finding that search warrant that issued based on the wiretaps was valid; thus, the Court shall adopt this finding as well. *See Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (failure to timely file objections shall bar parties from attacking on appeal the factual findings contained in the report).

For all of the foregoing reasons, Defendants' motions to suppress must be denied. Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Report of the Magistrate Judge (D.E. 662), issued on March 31, 2011, is **ADOPTED.**

2. Defendant Shaheed Rashard Thompson's Motion to Suppress Wiretap Evidence (D.E. 287), filed on September 1, 2010, is **DENIED**.

3. Defendant Antwan Roshax Gray's Motion to Suppress the Fruits of Illegal Wiretaps and Searches (D.E. 301), filed on September 1, 2010, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23rd day of September, 2011.

                                                  **JOAN A. LENARD**
                                                  **UNITED STATES DISTRICT JUDGE**